IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA CHEEK,

                              Plaintiff,

      v.

JEN BEEMAN, CLAIR KRUGER,
SARA CONKLIN and HEATHER,

                              Defendants.

OPINION AND ORDER

13-cv-527-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action brought under 42 U.S.C. § 1983, plaintiff Joshua Cheek contends that defendant Jen Beeman violated his rights when she denied him medical care for an alleged injury he sustained during an altercation with Beeman. Plaintiff is also proceeding against defendant Beeman on excessive force and battery claims and against all defendants on conspiracy and retaliation claims, but defendant Beeman's present motion for summary judgment pertains only to plaintiff's medical care claim against her. Dkt. #61. (For the remainder of the opinion, "defendant" will refer to Beeman only.)

Defendant argues that plaintiff's injury did not present a serious medical need and that defendant was not deliberately indifferent to plaintiff's injury. Because the undisputed facts show that defendant did not prevent plaintiff from receiving medical care, I am granting defendant's motion for summary judgment. Plaintiff has asked to file a surreply brief, dkt. #72, but his motion will be denied. He did not have leave to file a surreply and

1

it does not advance his arguments.

From the parties' proposed findings of fact, I find that the following facts are undisputed.

## UNDISPUTED FACTS

### A.  The Parties

At all times relevant to this lawsuit, plaintiff has resided at the Mendota Mental Health Institute, where he was placed after he was adjudged "guilty but not guilty [of a criminal offense] due to mental disease/defect."  Wisconsin v. Cheek, Winnebago County Case No. 2010CF000182.  Defendant Jen Beeman works at the Mendota Mental Health Institute as a registered nurse.

### B.  The Biting Incident

On August 29, 2012, plaintiff punched a Mendota Mental Health Institute staff member.  Defendant came to assist the staff member, and plaintiff began to strangle defendant.  At some point during or soon after the altercation, defendant bit plaintiff's hand. (Plaintiff alleges that the bite caused him injury.  Specifically, he says that he had "gashes on [his] left hand," Plt.'s Br., dkt. #70, at 6, and that his hand became infected after it was left untreated, Plt.'s Resp. to Dft.'s Proposed Findings of Fact, dkt. #67, ¶ 10. [Plaintiff filed two responses to defendant's proposed findings of fact and mentioned the infection in only the earlier of those responses.]  Defendant says plaintiff suffered only a bruise as a result of

the bite.)

### C.  Documentation of the Incident

Sometime after the altercation (the parties do not say when), defendant filled out a form called an Emergency Seclusion or Restraint Record, which is used to document incidents in which a patient is physically restrained or secluded.  Defendant described the altercation with plaintiff but did not state that she had bitten plaintiff's hand.  The form asks the staff member to check a box labeled "yes" or "no" in response to the following questions: "[1] Patient injured? [2] Patient peer injured? [3] Staff injured?"  Checking "yes" to these questions prompts the completion of other forms related to the injury.  Defendant did not check either box in response to the first question and checked "no" in response to the second question.  Defendant checked "yes" in response to the third question, and she filled out a Staff Injury Report.  In that report, defendant again described the altercation with plaintiff but did not say she had bitten plaintiff's hand.

### D.  Plaintiff's Medical Care

Approximately 15 minutes after the end of the altercation between plaintiff and defendant, a nurse assessed plaintiff's physical and mental condition.  The nurse continued to do so at fifteen-minute intervals for an hour following the incident.  A physician also assessed plaintiff approximately fifteen minutes after the altercation and noted a "bruise" on plaintiff's left hand.

During these medical assessments, plaintiff complained of stomach pain and told the nurse and doctors that he had swallowed nails. Staff members took plaintiff to the University of Wisconsin Hospital for x-ray imaging of his abdomen, which revealed no indication that he had ingested nails. Plaintiff did not request medical treatment for his hand from any of the medical professionals who treated him during his stay at the University of Wisconsin Hospital.

## OPINION

### A. Medical Care

#### 1. Applicable standard

As an initial matter, it is unclear whether plaintiff's claim for inadequate medical care comes under the Eighth Amendment or the Fourteenth Amendment. Plaintiff is housed at the Mendota Mental Health Institute because he was adjudged "guilty but not guilty" of a criminal offense "due to mental disease/defect." It is unclear whether this adjudication means that plaintiff is a "convicted" person for the purposes of the Eighth Amendment's protection against cruel and unusual punishment or whether he is treated like a pretrial detainee, who receives protection from the Fourteenth Amendment. Smentek v. Dart, 683 F.3d 373, 374 (7th Cir. 2012) ("[T]he cruel and unusual punishments clause does not apply to persons who though incarcerated have not been convicted and so are not being subjected to 'punishment.'"). Nevertheless, the Court of Appeals for the Seventh Circuit has applied the same standard under both provisions. McGee v. Adams, 721 F.3d 474, 480 (7th Cir.

4

2013) ("For claims of deliberate indifference, like this one, this Court has previously 'found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) without differentiation.'"(quoting Board v. Farnham, 394 F.3d 469, 478 (7th Cir.2005)) (internal quotations omitted).

"Courts interpret the Eighth Amendment, as incorporated through the Fourteenth Amendment, to impose a duty on states 'to provide adequate medical care to incarcerated individuals.'" Id. (quoting Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir.2006)). State officials violate their duties when they are deliberately indifferent to the serious medical needs of prisoners and detainees. Id. Thus, the first question is whether plaintiff suffered from a serious medical need.

2. Serious medical need

A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would recognize the need for a doctor's attention. Foelker v. Outagamie County, 394 F.3d 510, 512–13 (7th Cir. 2005). However, even a diagnosed medical condition does not necessarily establish a serious medical need; no matter how serious the condition, a plaintiff must show that the failure to treat the condition caused him injury or a serious risk of injury. Jackson v. Pollion, 733 F.3d 786, 789–90 (7th Cir. 2013).

Defendant argues that plaintiff did not suffer a serious medical need because she says

plaintiff suffered only a bruise and that such an injury is not sufficiently serious. It is true that a bruise does not generally rise to the level of a serious medical need. E.g., Pinkston v. Madry, 440 F.3d 879, 891 (7th Cir. 2006) (split lip and swollen cheek were not objectively serious medical needs); Davis v. Jones, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch cut was not serious medical need); Wine v. Turner, No. 08-cv-72-bbc, 2008 WL 2562965, at *4 (W.D. Wis. Apr. 29, 2008) ("A person can be bruised, swollen, bleeding and hurting and not have a serious medical need."); Baird v. Knopp, No. 13-cv-979-GPM, 2013 WL 6038264, at *4 (S.D. Ill. Nov. 14, 2013) (bruises on arm and cut on wrist did not constitute objectively serious medical condition); Caldwell v. McEwing, No. 00-1319, 2006 WL 2796637, at *11 (C.D. Ill. Sept. 28, 2006) ("[M]inor bruises and scrapes do not constitute a serious medical need.").

However, plaintiff appears to dispute defendant's characterization of his injury, saying that the bite caused infection and "gashes" on his hand. It is unclear what plaintiff means by the latter statement, but, in any event, it is possible that a bite that breaks the skin and results in infection constitutes a serious medical need. Cf. Holmes v. Algarin, 12-6245, 2013 WL 4763863, at *5 (E.D. Pa. Sept. 4, 2013) ("[Prisoner's] complaint of a bite lacks any stated facts regarding the nature of the bite, such as if the bite broke the skin, whether there was any blood, or if the bite looked infected. Thus, [it does] not state a serious medical need.").

However, none of the medical professionals who evaluated plaintiff on the evening of his injury noted broken skin on his hand. Furthermore, plaintiff did not specifically

request attention from the medical professionals for the injury to his hand, which suggests that if he was injured, the injury was not serious. Martin v. Tyson, 845 F.2d 1451, 1457–58 (7th Cir. 1988) (prisoner's failure to mention his tooth problem to doctor who treated his ear infection was "noteworthy" in determining existence of serious medical need). Thus, it appears unlikely that plaintiff suffered a serious medical need after defendant bit him. Nonetheless, the exact nature of plaintiff's injury is in dispute, so I cannot make this determination at summary judgment.

3. Deliberate indifference

Even if I assume that plaintiff's injury was a serious one, I conclude that defendant did not violate plaintiff's rights because defendant was not personally responsible for plaintiff's medical care and, in any event, her actions were not deliberately indifferent to plaintiff.

Plaintiff alleges that defendant did not provide care for his injuries following the altercation in which she bit him. Although defendant is a registered nurse responsible generally for the provision of medical care to patients, other Mendota Mental Health Institute staff members were available to provide plaintiff medical care and they did so. Plaintiff was seen by a nurse and a physician at Mendota and by other medical professionals at the University of Wisconsin Hospital. Plaintiff does not have the right to choose which staff members or medical professionals give him care and he does not explain why defendant was personally responsible for his medical care when other staff members gave him prompt

medical attention. Cf. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job.").

Plaintiff further alleges that defendant filled out her incident report incorrectly to state that plaintiff had no injuries and that he did not receive medical care for his injury as a result. Defendant did not check either box ("yes" or "no") in response to the incident report form's question about patient injury. The fact that defendant did not answer the question suggests that she did not know whether plaintiff had suffered any injuries, not that she knew of and disregarded his injury. After all, it is possible that she knew she bit plaintiff but not whether he was injured as a result. But even if I assume that plaintiff was seriously injured and that defendant knew it, defendant's omissions had no effect on plaintiff's receipt of medical care. The fact is that plaintiff received prompt medical attention from a nurse and a physician and later from a team of medical professionals at a hospital. Plaintiff says that these professionals noted his bite injury but did not treat it, but, even if that is true, he does not explain why he did not ask any of them for treatment. At the very least, defendant's actions did nothing to prevent plaintiff from requesting medical attention for his hand.

Because plaintiff has failed to demonstrate that defendant was deliberately indifferent to his medical needs, I am granting defendant's motion for summary judgment. The parties are reminded again that either side may file only one additional motion for summary judgment on all remaining claims.

B.  Plaintiff's Motion for Leave to File a Surreply Brief

Plaintiff has filed a supplemental response brief, which he labels as a "Sur-Reply Brief in Opposition of Motion for Summary Judgment on the Excessive force claim and Battery Claim," dkt. #73.  However, plaintiff devotes the major portion of his brief to defendant's reporting of the altercation with him, which is an argument relevant to plaintiff's medical care claim.  Thus, it is not clear what purpose plaintiff intended this brief to serve.  Whatever plaintiff's intentions, this filing is not helpful to him.  With respect to defendant's motion for summary judgment on excessive force and battery, dkt. #30, a surreply brief was unwarranted because defendant did not make new arguments in her reply brief.  Furthermore, plaintiff was successful in defeating that motion without any supplemental arguments.  Dkt. #76.  To the extent plaintiff intends to use this brief to respond to defendant's motion on his medical care claim, dkt. #61, the brief does not provide any new arguments or facts that are relevant to decide defendant's motion for summary judgment.  Accordingly, I am denying plaintiff's motion.


ORDER

IT IS ORDERED that

1.  Defendant Jen Beeman's motion for summary judgment on plaintiff Joshua Cheek's medical care claim, dkt. #61, is GRANTED.

2. Plaintiff's motion for leave to file a surreply brief, dkt. #72, is DENIED.

Entered this 6th day of August, 2014.

>BY THE COURT:
>/s/
>BARBARA B. CRABB
>District Judge